**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

RICHARD P. WOLENTER,
     805 Irenic Ct.
     Eagleville, PA 19403

       *Plaintiff*

    v.

BENEFICIAL BANCORP, INC.
     c/o CSC-Lawyers Incorporating
     Service Company
     7 St. Paul Street
     Suite 820
     Baltimore MD 21202

FRANK A. FARNESI
     c/o Beneficial Bancorp, Inc.
     c/o CSC-Lawyers Incorporating
     Service Company
     7 St. Paul Street
     Suite 820
     Baltimore MD 21202

EDWARD G. BOEHNE
     c/o Beneficial Bancorp, Inc.
     c/o CSC-Lawyers Incorporating
     Service Company
     7 St. Paul Street
     Suite 820
     Baltimore MD 21202

KAREN DOUGHERTY BUCHHOLZ
     c/o Beneficial Bancorp, Inc.
     c/o CSC-Lawyers Incorporating
     Service Company
     7 St. Paul Street
     Suite 820
     Baltimore MD 21202

MICHAEL J. DONAHUE
     c/o Beneficial Bancorp, Inc.

Case No.:

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

c/o CSC-Lawyers Incorporating
Service Company
7 St. Paul Street
Suite 820
Baltimore MD 21202

DONALD F. GAYHARDT, JR.
c/o Beneficial Bancorp, Inc.
c/o CSC-Lawyers Incorporating
Service Company
7 St. Paul Street
Suite 820
Baltimore MD 21202

ELIZABETH H. GEMMILL
c/o Beneficial Bancorp, Inc.
c/o CSC-Lawyers Incorporating
Service Company
7 St. Paul Street
Suite 820
Baltimore MD 21202

THOMAS J. LEWIS
c/o Beneficial Bancorp, Inc.
c/o CSC-Lawyers Incorporating
Service Company
7 St. Paul Street
Suite 820
Baltimore MD 21202

ROY D. YATES,
c/o Beneficial Bancorp, Inc.
c/o CSC-Lawyers Incorporating
Service Company
7 St. Paul Street
Suite 820
Baltimore MD 21202

Gerard P. Cuddy,
c/o Beneficial Bancorp, Inc.
c/o CSC-Lawyers Incorporating
Service Company
7 St. Paul Street
Suite 820
Baltimore MD 21202



*Defendants*.

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Richard P. Wolenter ("Plaintiff"), by his undersigned attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

### INTRODUCTION

1.      Plaintiff brings this action against Beneficial Bancorp, Inc. ("Beneficial" or the "Company") and the Company's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a). Specifically, Defendants solicit stockholder approval in connection with the proposed acquisition of the Company by WSFS Financial Corporation ("WSFS"), through a registration statement filed with the U.S. Securities and Exchange Commission (the "SEC"), that omits material facts necessary to make the statements therein not false or misleading.

2.      On August 8, 2018, Beneficial and WSFS issued a press release announcing that the two entities had entered into a definitive agreement (the "Merger Agreement"), by which Beneficial will merge into WSFS (the "Proposed Transaction"). Under the terms of the agreement, each outstanding share of Beneficial common stock issued and outstanding will be converted into the right to receive (i) 0.3013 shares of WSFS common stock and (ii) $2.93 in cash (the "Merger Consideration"). The transaction is valued at $1.5 billion, potentially creating the largest, premier,

locally-headquartered community bank for the Greater Delaware Valley with the sixth-largest deposit market share.

3.　　On September 27, 2018, defendants issued materially incomplete and misleading disclosures in a Form S-4 Registration Statement (the "Registration Statement") filed with the SEC in connection with the Proposed Transaction. Specifically, the Registration Statement is materially deficient and misleading because, *inter alia*, it omits material information concerning: (i) financial projections for Beneficial; (ii) the valuation analyses performed by Beneficial's financial advisor, Sandler O'Neill & Partners, L.P. ("Sandler O'Neill"), in support of their fairness opinion; (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest involving Company insiders. Without this information, Beneficial stockholders cannot make an informed decision with respect to the Proposed Transaction. The omission of such material information constitutes a violation of §§ 14(a) and 20(a) of the Exchange Act, as stockholders need such information in order to cast a properly informed vote on the Proposed Transaction.

4.　　For these reasons, as set forth in detail herein, the Individual Defendants, and the Company, have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

5.　　This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder

6.　　Personal jurisdiction exists over each Defendant either because Defendant Beneficial is headquartered and maintains operations in this District, or because each of the other

Defendants is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Beneficial is incorporated in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.      Plaintiff is, and has been at all relevant times, the owner of shares of Beneficial common stock.

9.      Defendant Frank A. Farnesi ("Farnesi") is a director of Beneficial.

10.     Defendant Edward G. Boehne ("Boehne") is the Vice Chairman of the Board of Beneficial.

11.     Defendant Karen Dougherty Buchholz ("Buchholz") is, and has been at all relevant times, a director of Beneficial.

12.     Defendant Michael Donahue ("Donahue") is, and has been at all relevant times, a director of Beneficial.

13.     Defendant Donald F. Gayhardt, Jr. ("Gayhardt") is, and has been at all relevant times, a director of Beneficial.

14.     Defendant Elizabeth H. Gemmill ("Gemmill") is, and has been at all relevant times, a director of Beneficial.

15.     Defendant Thomas J. Lewis ("Lewis") is, and has been at all relevant times, a director of Beneficial.

16.     Defendant Roy D. Yates ("Yates") is, and has been at all relevant times, a director of Beneficial.

17.     Defendant Gerard P. Cuddy ("Cuddy") has served as President and Chief Executive Officer ("CEO") of the Company since 2006, as a director of the Company since 2014, and a trustee of the Bank since 2006.

18.     Defendants Yates, Lewis, Gemmill, Gayhardt, Donahue, Buchholz, Boehne, Cuddy, and Farnesi are collectively referred to as "Individual Defendants" and/or the "Board."

19.     Defendant Beneficial, incorporated in Maryland, is a community-based, diversified financial services company providing consumer and commercial banking services. The Company's principal subsidiary, Beneficial Bank, has served individuals and businesses in the Delaware Valley area since 1853. Beneficial common stock is traded on Nasdaq under the ticker symbol "BNCL." The Company maintains its principal executive offices at 1818 Market Street, Philadelphia, Pennsylvania 19103.

20.     The Individual Defendants and Beneficial are collectively referred to as "Defendants."

## OTHER RELEVANT ENTITIES

21.     WSFS Financial Corporation is a multi-billion dollar financial services company. Its primary subsidiary, WSFS Bank, is the oldest and largest locally-managed bank and trust company headquartered in Delaware and the Delaware Valley. As of June 30, 2018, WSFS Financial Corporation had $7.11 billion in assets on its balance sheet and $19.09 billion in assets under management and administration. WSFS operates from 77 offices located in Delaware (46), Pennsylvania (29), Virginia (1) and Nevada (1) and provides comprehensive financial services including commercial banking, retail banking, cash management and trust and wealth management.

## FURTHER SUBSTANTIVE ALLEGATIONS

**The Background of the Company & Merger**

22.     Founded in 1853, Beneficial Bank is the oldest and largest bank headquartered in Philadelphia. With over 60 offices in the greater Philadelphia and South Jersey regions and approximately $5.9 billion in assets, Beneficial is a full service financial institution whose product offering includes commercial, consumer and real estate lending, equipment finance, insurance and wealth management services.

23.     Despite the Company's long-standing commitment to providing financial education to individuals and businesses in the Delaware Valley for more than 160 years, Gerard P. Cuddy ("Cuddy"), President and Chief Executive Officer of Beneficial, has had, from time to time, informal discussions with representatives of other financial institutions, including WSFS, concerning a strategic transaction.

24.     Specifically, on February 23, 2018, Cuddy met with Mark A. Turner, the current Chairman, President and Chief Executive Officer of WSFS in Philadelphia, PA, for a general discussion of the financial services industry, and to discuss the potential combination of WSFS and Beneficial.

25.     While Beneficial's gaze was largely focused on WSFS, in March 2018, at the direction of Beneficial, Sandler O'Neill began contacting various financial institutions to solicit their potential interest in a business combination transaction with an institution located in the Philadelphia market.

26.     One month later, in April 2018, Sandler O'Neill contacted nine financial institutions, including WSFS, as well as some of the institutions previously contacted in March, to solicit their potential interest in a business combination transaction Beneficial. Of these nine institutions, five indicated that they did not have interest in a potential business combination (due

to relative size or other factors), two indicated that they may have future interest but were not prepared to pursue a transaction at the time and two institutions, including WSFS, expressed a desire to explore the opportunity.

27.     Preliminary discussions between WSFS, Beneficial, and the entities respective representatives, regarding a potential strategic transaction occurred throughout the months of April and into early May until, on May 21, 2018, WSFS submitted a non-binding indication of interest letter that set forth, among other things, a proposed price range of $19.00 to $20.00 per share of Beneficial common stock, with the merger consideration to be paid in a combination of cash and WSFS common stock.

28.     However, WSFS wasn't the only institution interested in a potential transaction with Beneficial. While the second institution that had earlier expressed interest in exploring an opportunity at the same time as WSFS subsequently indicated that it was not prepared to pursue a transaction at the time, the two institutions that had previously indicated they were interested in a business combination transaction, but were not prepared to move forward at the time, provided Beneficial with preliminary merger consideration ranges regarding a future transaction that were below the proposed $19.00 to $20.00 per share range offered by WSFS.

29.     On May 23 and 24, 2018, the Beneficial Board held a two-day offsite strategic planning session. During the second day of the strategic planning session, and following a thorough review of WSFS's proposal, the Beneficial board of directors determined that, given the challenges of remaining an independent entity, including the related execution risk associated with implementing Beneficial's strategic plan, pursuing the mergers with WSFS was in the best interests of Beneficial's stockholders.

30.     On May 29, 2018, Beneficial and WSFS entered into a mutual nondisclosure and exclusivity agreement regarding the proposed business combination transaction and commenced formal reciprocal due diligence efforts.

31.     Throughout the month of June, the two entities, and their respective representatives held numerous meetings concerning the proposed mergers and the parties' ongoing reciprocal due diligence efforts as well as the merger consideration to be paid by WSFS in connection with the transaction.

32.     On July 1, 2018, WSFS submitted an updated non-binding indication of interest letter to Beneficial. The updated non-binding indication of interest letter proposed, among other things, merger consideration with a value of $19.50 per share of Beneficial common stock, with shares of WSFS common stock comprising approximately 85% of the consideration and cash comprising approximately 15% of the merger consideration. With respect to the stock consideration, the updated non-binding indication of interest letter further proposed a fixed exchange ratio of 0.3013 of a share of WSFS common stock for each outstanding share of Beneficial common stock.

33.     WSFS's updated proposal was reviewed by the Board on July 13, 2018. Following a discussion regarding the proposed combination, including the anticipated reaction of Beneficial's stockholders and customers and the proposed operational and systems integration between Beneficial and WSFS, the Board directed management to proceed with finalizing the terms of the proposed transaction.

34.     Between July 17, 2018 and August 7, 2018, the parties exchanged drafts of the merger agreement and other transaction documents, including voting agreements to be entered into by the Beneficial and WSFS directors, as well as certain Beneficial and WSFS executive officers,

and the two entities worked towards finalizing the terms and conditions of the transaction. During this period, Beneficial and WSFS also continued their reciprocal due diligence efforts.

35.     On August 7, 2018, the Board held a meeting to review the current status of negotiations concerning the Proposed Transaction, including the status of all material open issues in the Merger Agreement. During the meeting, Sandler O'Neill presented to the Board its oral opinion that the consideration to be paid to the holders of shares of the Company's common stock in the proposed Merger, is fair, from a financial point of view, to such stockholders. Shortly thereafter, after considering the proposed terms of the merger agreement and related transaction documents, and taking into consideration the matters discussed during that meeting the Board unanimously determined that the mergers, the merger agreement and the other transactions contemplated by the merger agreement were in the best interests of Beneficial and its stockholders, and the directors unanimously approved and adopted the merger agreement and the transactions contemplated by it and unanimously determined to recommend that Beneficial's stockholders approve the merger agreement.

36.     That same day, the parties executed the merger agreement, the directors and certain executive officers of Beneficial executed the voting agreements with WSFS and the directors and certain executive officers of WSFS executed the voting agreements with Beneficial, and certain executive officers of Beneficial executed their letter agreements with WSFS.

**Proposed Transaction**

37.     In a press release dated August 8, 2018, Beneficial announced that it had entered into a Merger Agreement with WSFS pursuant to which stockholders of Beneficial will receive 0.3013 shares of WSFS common stock and $2.93 in cash for each share of Beneficial common stock.

38.     The press release states in pertinent part:

ENGLEWOOD WILMINGTON, Del. and PHILADELPHIA, Aug. 08, 2018 (GLOBE NEWSWIRE) -- WSFS Financial Corporation (NASDAQ:WSFS) and Beneficial Bancorp, Inc. (NASDAQ:BNCL), jointly announced today the signing of a definitive agreement whereby WSFS Financial Corporation ("WSFS") will combine with Beneficial Bancorp, Inc. ("Beneficial"), in a transaction valued at approximately $1.5 billion. Concurrently with the acquisition, Beneficial Bank, the wholly owned subsidiary of Beneficial, will merge into WSFS Bank, a wholly owned subsidiary of WSFS, creating the largest, premier, locally-headquartered community bank for the Greater Delaware Valley with the sixth-largest deposit market share. With approximately $13 billion in assets and growing, WSFS will be the only bank in the region with distinct market-share advantages, including local market knowledge and decision-making, a full-service product suite, the balance sheet to compete with larger regional and national banks, and most importantly, an ingrained culture of engaged Associates that bring to life WSFS' mission of **We Stand For Service** in our daily delivery of stellar Customer experiences.

WSFS Bank and Beneficial Bank share similar histories, missions, heritages and footprints. WSFS Bank was founded as Wilmington Savings Fund Society in Wilmington, Del. in 1832, for working citizens to encourage thrift and to safeguard their savings. Beneficial was founded in 1853 in Philadelphia, Pa., as Beneficial Savings Fund Society to provide a safe and secure place for immigrants to deposit their savings. Both banks offer retail, commercial and mortgage products and each provide specialized solutions that will round out the combined bank's full service product offerings. WSFS operates from 77 offices, including 60 banking offices, predominantly in Delaware and southeastern Pennsylvania. Beneficial operates from 72 offices, including 61 banking offices, that are predominantly in the City of Philadelphia and neighboring communities in southeastern Pennsylvania and southern New Jersey.

"This is an historic combination," said WSFS' Chairman, President and CEO Mark A. Turner, who will become WSFS' Executive Chairman on January 1, 2019. "As a native Philadelphian and a lifelong resident of the Delaware Valley, I believe this combination provides a compelling opportunity to serve our combined markets as it fills a long-standing gap between big banks and smaller community banks in this market. Together, we are poised and positioned to serve Customers, to capture good market share, to expand the reach of our proven successful business model, and to deliver sustainable high performance for years to come."

Gerard P. Cuddy, President and CEO of Beneficial said, "We strongly believe there is value in partnering with WSFS and combining the strengths of our institutions. This is a sound decision for Beneficial, our stockholders, our employees and the communities we serve. We are combining with WSFS because it is an established institution with deep roots in the Delaware Valley, shares our values, and has the utmost respect for Beneficial's legacy."

"We are excited to be joining WSFS," added Frank A. Farnesi, Beneficial's Chairman.   "It's a superior financial services company that has consistently delivered outstanding value to its stockholders.   The combination of these two banking franchises will create a financial powerhouse uniquely dedicated to the customers and communities of the Delaware Valley."

The combination is WSFS' eighth acquisition since 2010, including traditional banks and other fee-based businesses in southeastern Pennsylvania and Delaware.   WSFS' proven track record of successful integrations, combined with its strong organic growth and purposeful expansion into the greater Delaware Valley, has resulted in the creation of new jobs and significant community and economic investments.

WSFS anticipates consolidating approximately 25% of the combined physical banking offices over the next 12 to 24 months due to geographic overlap, changing Customer needs and optimization opportunities within the network. WSFS plans to reinvest an incremental $32 million, or about 50% of the estimated cost savings from the network optimization, into a five-year transformational investment in technology and delivery systems.   The delivery transformation will produce a top-tier physical and digital servicing platform that will significantly enhance customer experiences across all business lines.

"This partnership and our delivery transformation aligns with our Strategic Plan," said longtime Delaware Valley banker Rodger Levenson, WSFS' Executive Vice President and Chief Operating Officer who will become President and CEO of WSFS on January 1, 2019.   "Our combination with Beneficial creates the ideal opportunity to transform WSFS' Customer delivery and back office systems that will secure our competitive edge in a fast-changing financial services industry.  This combination and the complementary technological investment aligns with WSFS' proven strategy of accelerating investment spending over the short-term to deliver superior long-term returns for WSFS Owners.   Our combined organization, with over 350 years of banking history, better positions us to continue to serve and outperform for all of our constituents, and vaults us past the $10 billion Dodd-Frank threshold in an economical way."

Under the terms of the agreement, which has been unanimously approved by the boards of directors of both companies, stockholders of Beneficial will receive 0.3013 shares of WSFS common stock and $2.93 in cash for each share of Beneficial common stock.  Based on WSFS' closing price as of August 7, 2018, the per share value equates to $19.61 for Beneficial stockholders.

WSFS expects to incur pre-tax merger and restructuring costs related to both the merger and transformation investments of approximately $146 million and to achieve annual synergies of $68 million per year, once fully phased in by 2021.  Approximately $56 million of such synergies, or 37% of Beneficial's year-to-date 2018 annualized non-interest expense, are anticipated to be derived from

non-branch operations and personnel costs, with the balance stemming from both organizations as a part of the delivery transformation initiative.  The acquisition is expected to be accretive to WSFS' earnings per share in the first full year of combined operations, excluding the one-time merger and restructuring costs noted above, and 8% accretive once all synergies are achieved in 2021, generating an internal rate of return (IRR) of approximately 19%.  The transaction is expected to close during the first quarter of 2019.

Upon completion of the acquisition, Gerard P. Cuddy, President and CEO of Beneficial, will become Vice Chairman of WSFS Bank and will join the Boards of Directors of WSFS Financial and WSFS Bank along with two mutually agreed upon current directors of Beneficial's Board.

**The Registration Statement Misleads Beneficial Stockholders by Omitting Material Information**

39.     On September 27, 2018, Beneficial caused to be filed the Registration Statement with the SEC. As alleged below and elsewhere herein, the Registration Statement contains material misrepresentations and omissions of fact that must be cured to allow Beneficial's stockholders to render a properly informed decision with respect to the Proposed Transaction. Designed to convince shareholders to vote in favor of the Proposed Transaction, the Registration Statement is rendered misleading by the omission of critical information concerning the financial analyses performed by the Company's financial advisors, and other crucial issues. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to Beneficial's stockholders.

*Material Omissions Concerning the Company's Financial Projections:*

40.     With respect to Beneficial's projected financial information, the Registration Statement fails to provide material information necessary for the Company's stockholders to evaluate both the Company's future as a standalone entity and the valuation analyses performed by Sandler O'Neill.

41.     Beneficial engaged Sandler O'Neill to render financial advisory and investment banking services to Beneficial, including an opinion to the Beneficial Board as to the fairness, from a financial point of view, to the holders of Beneficial common stock of the Merger Consideration. On the other side of the transaction, WSFS engaged Boenning & Scattergood, Inc. ("Boenning"), to render financial advisory and investment banking services to WSFS, including an opinion to the WSFS board of directors as to the fairness, from a financial point of view, to WSFS of the merger consideration to be paid pursuant to the merger agreement. As the Registration Statement notes, both financial advisors utilized financial information concerning the respective businesses and operations of Beneficial. Specifically, Boenning's opinion was based on "financial information concerning the respective businesses and operations of WSFS and Beneficial furnished to Boenning & Scattergood by WSFS and Beneficial or which Boenning & Scattergood was otherwise directed to use for purposes of its analysis." Registration Statement at 95.

42.     However, with respect to Boenning's *Discounted Cash Flow Analysis*, Boenning performed a discounted cash flow analysis to estimate a range for the implied equity value of Beneficial, taking into account the cost savings and related expenses expected to result from the mergers as well as certain accounting adjustments assumed with respect thereto. As part of this analysis, Boenning utilized "the present value of the estimated excess cash flows that Beneficial could generate over the five-year period from 2017 to 2021." Registration Statement at 107. However, the *Certain Prospective Financial Information* section of the Registration Statement fails to disclose any cash flow projections for Beneficial. Clearly, Boenning utilized financial forecasts and projections for Beneficial as part of its analysis. These forecasts and projections are material to Beneficial shareholders and must be disclosed so that the Company's stockholders can

evaluate both the Company's future as a standalone entity and the valuation analyses performed by Boenning.

***Material Omissions Concerning the Financial Advisors' Financial Analyses:***

43.     In addition to the material omissions identified above, the description in the Registration Statement of Sandler O'Neill's fairness opinion, and the underlying analyses, omits key inputs and assumptions of Beneficial underlying these analyses. Without this information, as described below, Beneficial's public stockholders are being misled as to what weight, if any, to place on the financial advisor's fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to Beneficial stockholders.

44.     Specifically, with respect to respect to Sandler's Beneficial and WSFS Net Present Value Analyses, the Registration Statement fails to disclose: (i) the terminal value of a share of Beneficial common stock at December 31, 2022; (ii) the inputs and assumptions underlying the selection of Beneficial's price to 2022 earnings per share multiples ranging from 14.0x to 19.0x; (iii) the inputs and assumptions underlying the selection of Beneficial's multiples of December 31, 2022 tangible book value per share ranging from 130% to 193%; (iv) the terminal value of a share of WSFS common stock at December 31, 2022; (v) the inputs and assumptions underlying the selection of WSFS's price to 2022 earnings per share multiples ranging from 13.0x to 18.0x; and (vi) the inputs and assumptions underlying the selection of WSFS's multiples of December 31, 2022 tangible book value per share ranging from 200% to 300%.

45.     Similarly, with respect to Sandler O'Neill's *Beneficial and WSFS Peer Group Analyses*, the Registration Statement omits to disclose the individual metrics Sandler O'Neill calculated for each company utilized. The omission of these values renders the summary of the

analysis materially incomplete and misleading. A fair summary of the *Beneficial and WSFS Peer Group Analyses* requires the disclosure of the individual values for each company in the Beneficial and WSFS Peer Groups; merely providing the low, mean, median, and high values that a banker applied is insufficient, as shareholders are  unable to assess whether the banker utilized the appropriate companies, or, instead, selected certain companies that yielded unreasonably low values in order to make the Proposed Transaction appear more favorable. *See* Registration Statement at 85-87. Accordingly, Sandler O'Neill's *Beneficial and WSFS Peer Group Analyses* is materially incomplete and misleading, and the individual values for each company observed must be disclosed so Beneficial shareholders can determine whether the range of multiples set forth in the Registration Statement actually reflect the true value of the Company and, ultimately, whether the Proposed Transaction is in their best interest.

46.     Closely related to the omissions identified above, is the absence of information relating to with Sandler O'Neill's *Analysis of Selected Precedent Transactions*, as the Registration Statement fails to disclose the individual values Sandler calculated for each transaction utilized. *See* Registration Statement at 87-89. For the same reasons mentioned above, the failure to disclose the individual values calculated for each of the transactions that were considered renders the summary of the analysis materially incomplete and misleading.

47.     Finally, with respect to Sandler O'Neill's *Pro Forma Merger Analysis*, the summary of the analysis provides:

> The analysis indicated that the merger could be approximately neutral to WSFS's estimated earnings per share (excluding one-time transaction costs and expenses) in the year ending December 31, 2019, **accretive** to WSFS's estimated earnings per share (excluding one-time transaction costs and expenses) in the years ending December 31, 2020 through December 31, 2022, **dilutive** to WSFS's estimated tangible book value per share at close and at December 31, 2019, December 31, 2020, and December 31, 2021 and **accretive** to WSFS's estimated tangible book value per share at December 31, 2022.

Registration Statement at 91 (emphasis added). In a merger such as this, where the Merger Consideration is in the form of stock and cash, Beneficial stockholders would want to know the financial impact the Proposed Transaction will have on the combined business. However, the Registration Statement entirely fails to quantify how "accretive" or "dilutive" the Proposed Transaction could be during the years ending December 31, 2020 through December 31, 2022.

48.     When a bankers' endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses are crucial to a fair presentation of the material facts. Furthermore, the disclosure of projected financial information provides stockholders with the best basis to project the future financial performance of a company, and allows stockholders to understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. This information is therefore material, and must be disclosed if Beneficial's stockholders are to make a fully informed decision. The omission of this information renders the statements made concerning the financial advisors' analyses and opinions materially misleading.

49.     Without such omitted information, Beneficial's stockholders cannot evaluate for themselves whether the financial analyses performed by either financial advisor were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omitted information identified above is required in order to ensure that stockholders can evaluate the extent to which Sandler O'Neill's opinions and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

50.     The omission of this information renders certain portions of the Registration Statement false and/or materially misleading in contravention of the Exchange Act including, inter alia, the following section of the Registration Statement: (i) "*Opinion of Beneficial's Financial Advisor;*" and (ii) "*Certain Prospective Financial Information.*"

***Material Omissions Concerning the Background Process***

51.     The Registration Statement also omits to disclose material information regarding the background process leading up to the Proposed Transaction and potential conflicts of interest.

52.     As provided in the  Registration Statement:

> Beneficial and its subsidiaries have agreed to, and to direct its representatives to, immediately cease and cause to be terminated any existing activities, discussions or negotiations with any third party conducted prior to the date of the merger agreement, with respect to any offer or proposal that constitutes, or may reasonably be expected to lead to, an acquisition proposal, to request the prompt return or destruction of all confidential information previously furnished to any person (other than WSFS and its subsidiaries) that has made or indicated an intention to make an acquisition proposal and ***not to waive or amend any "standstill" provision or provisions of similar effect to which it is a party or of which it is a beneficiary, and to strictly enforce any such provisions.***

Registration Statement at 134-35 (emphasis added).  However, the Registration Statement fails to disclose whether the Company entered into any confidentiality agreements with any potential bidders that contain standstill provisions that are still in effect and/or "don't-ask-don't-waive" standstill provisions that are presently precluding these parties from making a topping bid for the Company.

53.     The Registration Statement also states that at the April 19, 2018 Board meeting, the Board "discussed verbalized interest regarding a business combination with Beneficial that Beneficial had received from various third party financial institutions in connection with [Sandler's] outreach initiated in March 2018." *Id.* at 72.  The Registration Statement, however, fails to disclose the details of the verbalized interest Beneficial received from various third party

financial institutions.  The Registration Statement further discloses that following the April 19, 2018 Board meeting, Sandler O'Neill's "contacted nine financial institutions, including WSFS *as well as some of the institutions previously contacted in March . . . ." Id.* (emphasis added).  The Registration Statement fails to disclose Sandler's basis for only contacting some of the institutions previously contacted in March and whether, following the April 19, 2018 Board meeting, Sandler O'Neill contacted all of the institutions that had previously expressed interest in connection with the March 2018 outreach.

54.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the "*Background of the Merger*" section of the Registration Statement.

### *Material Omissions Concerning Beneficial Insiders' Potential Conflicts of Interest*

55.     Finally, the Registration Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's directors and executive officers.

56.     As noted in the Registration Statement, following the completion of the Proposed Transaction, Defendant Cuddy will become Vice Chairman of WSFS Bank and, along with two other Board members, will join the boards of directors of WSFS and WSFS Bank.  Further, WSFS will establish an advisory board and invite Defendant Cuddy, and the Board members who are not appointed to the board of the combined company, to join.

57.     Absent from the Registration Statement are any details concerning all employment-related discussions and negotiations that occurred between WSFS and Beneficial executive officers and directors, including who participated in all such communications, when they occurred, and their content, as well as whether any of WSFS' prior proposals or indications of interest mentioned management retention or board membership in the combined company.

Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

58.     The omission of this information renders the statements in the "Background of the Mergers," "Management and Board of Directors of WSFS After the Mergers," and "Interests of Beneficial's Directors and Executive Officers in the Mergers" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

59.     Accordingly, Plaintiff seeks, among other things, the following relief: (i) enjoinment of the Proposed Transaction; or (ii) rescission of the Proposed Transaction in the event that it is consummated and to recover damages resulting from Defendants' misconduct.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 Promulgated Thereunder**

60.     Plaintiff repeats and realleges each allegation set forth herein.

61.     As detailed herein, Defendants disseminated the false and misleading Registration Statement specified above, which contained statements which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts and which omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct earlier statements which had become false or misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

62.     By the use of the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of their names to solicit proxies or consents or authorizations in respect of the common stock of Beneficial.

63.     By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by Defendants. The Registration Statement misrepresented and omitted material facts, including material information concerning the actual intrinsic value of the Company. Defendants were at least negligent in filing and disseminating the Registration Statement with these materially false and misleading statements and omissions. Defendants have also failed to correct the Registration Statement and the failure to update and correct false statements is also a violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

64.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding whether to vote in favor of and tender their shares in the Proposed Transaction. A reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Registration Statement and in other information reasonably available to stockholders.

65.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

66.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

67.     The Individual Defendants acted as controlling persons of Beneficial within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and directors of Beneficial and their participation in and awareness of the Company's business and operations and their intimate knowledge of the materially false statements and omissions contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

68.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be false and misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

69.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. Among other things, the Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, they were directly involved in the making of that document.

70.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the

Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered – descriptions which had input from the Individual Defendants.

71.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in Plaintiff's favor and against Defendants as follows:

a)   declaring that the Registration Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

b)   preliminarily and permanently, enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

c)   to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

d)   awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

e)   granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 31, 2018                    **LEVI & KORSINSKY LLP**

*/s/ Donald J. Enright*

Donald J. Enright
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
Email: denright@zlk.com

*Attorneys for Plaintiff*